**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

BRIAN RIDLEY                                                                                    PLAINTIFF
ADC #132246

v.                                                    4:17CV00406-JTK

DOC HOLIDAY, et al.                                                                      DEFENDANTS

## MEMORANDUM AND ORDER

### I.   Introduction

Plaintiff Brian Ridley filed this pro se action pursuant to 42 U.S.C. § 1983 while incarcerated at the Pulaski County Regional Detention Facility (Jail), alleging Defendants failed to provide him with adequate medical treatment and improperly placed him in administrative segregation. (Doc. Nos. 1, 6).  Defendant Holiday and the Americans with Disabilities Act (ADA) claim were dismissed on September 19, 2017 (Doc. No. 20).

Pending before the Court are the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendant Latasha Harris (Doc. Nos. 21-23).   Plaintiff did not respond, and by Order dated April 24, 2018, this Court cautioned Plaintiff that his failure to respond to the Motion within fifteen days of the date of the Order would result in either all the facts set forth in the Motion being deemed admitted by him, or dismissal of the action, without prejudice, for failure to prosecute (Doc. No. 24).   The Court also noted that Plaintiff had not identified or served any of the "Doe Defendants" and directed him to do so within fifteen days, pursuant to FED.R.CIV.P. 4(m). (Id.) As of this date, however, Plaintiff has not responded to the Motion.

### II.   Amended Complaint

Plaintiff alleged that during his incarceration at the Jail, Defendants denied him equal access to the programs, services, and benefits of the Jail until he gave up his wheelchair, walker, and cane. (Doc. No. 6, p. 1)  He was placed in segregation for needing his wheelchair for assistance in the shower and while using the telephone, and while in segregation, was not allowed privileges such as out of cell time, daily showers, telephone calls, and smoking privileges. (Id., p. 2)  When he first arrived at the Jail, he was sent to segregation because of his disability. (Id., p. 3)

### III.  Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by

the non-moving party...." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED.R.CIV.P. 56(e)(2).

### A.   Official Capacity

The Court agrees with Defendant that Plaintiff's monetary claims against her in her official capacity should be dismissed, because he did not allege that her actions were taken pursuant to an unconstitutional policy, practice, or custom, or any widespread pattern of unconstitutional conduct. A suit against a county official in his/her official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Absent such an allegation, or a response from Plaintiff, the Court finds the monetary claims against Defendant in her official capacity should be dismissed.

### B.   Individual Capacity

The Court also agrees that Plaintiff's claims against Defendant in her individual capacity should be dismissed, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity

3

are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.   Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.   Nelson, 583 F.3d at 528.

According to the affidavit of Robin Ballard, Legal/Administrative Sergeant at the Jail, Plaintiff was booked into the Jail on February 23, 2017. (Doc. No. 22-1, p. 1)   He pleaded guilty to one count of terroristic act charges and one count of felon in possession of a firearm charges on June 26, 2017, and was sentenced to twenty-five years in the ADC. (Id., p. 2) He was released from the Jail to the ADC on August 29, 2017. (Id.)   Defendant also submitted copies of Jail policies which provide that the classification process begins immediately upon a person's admission to the Jail, and the deputy accepting custody of the person is responsible for visually inspecting persons admitted for noticeable signs of health care problems. (Doc. No. 22-2, p. 5) An intake classification caseworker is responsible for re-interviewing the inmate within seventy-two

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. at 236).

4

hours of assignment, and makes an initial classification and program recommendation to the classification board. (Id., p. 6)   The board reviews/approves an inmate's initial classification and reviews the status of each inmate in segregation status every thirty days, affording the inmate the opportunity to appear in person to present his case to the board. (Id., p. 9)   An inmate may appeal the classification board's decision to the board and then to the Chief of Detention. (Id., p. 11)

Inmates classified in segregation are classified into two sub-levels, special needs inmates and administrative segregation inmates. (Id., p. 20)   Segregated inmates have access to the same programs and services as general population inmates unless privileges are curtailed by a board hearing and disciplinary hearing, or necessary to protect the inmate or others. (Id., pp. 19-20)   If it is determined in the intake screening that an inmate has a disability that affects his ability to function within the facility, such as a wheelchair, cane or crutches, the intake medical provider will make a note of this and inform the watch commander of the type of accommodation required. (Doc. No. 22-1, p. 12)   Although the W unit (medical) at the Jail is closest to the infirmary and is limited to inmates with medical conditions, inmates with certain charges cannot be housed there due to safety concerns. (Doc. No. 22-2, p. 2)

According to Defendant Harris, who is a classification specialist at the Jail, upon Plaintiff's booking into the Jail, he was assigned to administrative segregation due to his reliance on a wheelchair, walker, and cane, and also due to the nature of his charges. (Doc. No. 22-2, p. 2)   He was disqualified from placement in the medical unit because of the terroristic act charges pending against him. (Id.)   According to Nancy Brawley, grievance officer at the Jail, Plaintiff filed a grievance on February 27, 2017, stating he would give up his wheelchair in order to be placed in general population. (Doc. No. 22-3, p.2) The grievance was returned to him as involving a non-grievable issue, and he appeared before the classification board on March 2, 2017. (Id., Doc. No.

5

22-1, p. 2)  At that time, the board agreed to move him to general population, and Plaintiff completed a medical communication form indicating that he agreed to give up his wheelchair. (Id.) He moved to general population on March 3, 2017, but was found guilty of a disciplinary on March 7, 2017, and sentenced to disciplinary segregation from March 17, 2017, until April 6, 2017. (Id.) Plaintiff moved back to general population on April 3, 2017, and on April 6, 2017, he requested to use his wheelchair while in the shower and while using the telephone. (Id., p. 3) Following the request, the board decided he should be returned to administrative segregation due to his reliance on a wheelchair. (Id.) Defendant Harris was chair of the classification board during the hearing on April 12, 2017. (Doc. No. 22-2, p. 2)  Plaintiff filed another grievance stating he would give up his wheelchair if he could return to general population, and a nurse witnessed him walk without assistance. After the health services administrator reviewed his record and noted he signed a release for his wheelchair, his classification appeal was granted and he was returned to general population on April 14, 2017. (Doc. No. 22-1, p. 3)

On June 1, 2017, Plaintiff filed a sick call requesting to be placed in the medical unit so that he could access his wheelchair without the restrictions of medical administrative segregation. (Id., p. 4)  His wheelchair was returned, and he was placed back on medical administrative segregation. (Id.)  On August 21, 2017, he filed a grievance requesting return of his wheelchair because he fell and injured his knee. (Doc. No. 22-3, p. 2)  The wheelchair was then returned to him and he was placed on medical segregation. (Id.)  On August 29, 2017, he filed another grievance asking to be returned to general population, and he was released to the ADC on the same day. (Id., Doc. No. 22-1, p. 4)

Based on these undisputed facts, the Court finds as a matter of law that Defendant Harris did not violate Plaintiff's constitutional rights. Since Plaintiff was a pretrial detainee at the time of

his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement.  Bell v. Wolfish, 441 U.S. 520, 538 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). Therefore, in order to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that Defendants were deliberately indifferent to a serious health and safety need. Farmer v. Brennan, 511 U.S. 825, 834 (1994).   In addition, although a pretrial detainee may be punished for misconduct which occurs while he awaits trial, a detainee "cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." Hawkins v. Byrd, 4:08cv01891-WRW-BD, 2009 WL 1313269 (E.D.Ark. 2009). Yet, "not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996).  In determining whether a restriction is permissible, the court should first ask whether it is based on an express intent to inflict punishment, and then whether punitive intent can be inferred from the restriction. Griffis v. Medford, No. 05-3040, 2008 WL 2945562 (W.D.Ark. 2008), citing Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002).

Plaintiff's initial placement in administrative segregation was based on his health needs of the wheelchair and crutches and was not "punishment," because it was reasonably related to a legitimate government interest in maintaining safety and security in the Jail. Bell v. Wolfish, 441 U.S. at 535.   Whenever he asked to be moved to general population and offered to give up his wheelchair, he was moved. He was placed back in segregation based on a disciplinary conviction, from which he was given the opportunity to appeal. According to Defendant's affidavit, the disciplinary hearing process is separate and distinct from that of the classification board. (Doc. No.

7

22-2, p. 2) In addition, each time Plaintiff was placed in administrative segregation, it was because of his wheelchair, and each time he communicated that he no longer needed it, he was moved to general population.

In this case, Plaintiff does not allege he was denied due process prior to being placed in administrative segregation following his disciplinary charge. He claims, rather, that his placement based on his use of a wheelchair and crutches was punitive, and lacked due process. Yet, the classification board reviews the status of each inmate in segregation every thirty days and provides the inmate the opportunity to appear in person. (Doc. No. 22-2, p. 9) And an inmate may appeal the decision to the board and to the Chief of Detention. (Id., p. 11)  Plaintiff does not claim that he was denied these procedures, but that he was denied access to certain privileges and to medical prosthetics, asthma pumps and medicines. However, he is not specific and sets forth no facts to support a finding that he was deprived of the "minimal civilized measure of life's necessities." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004). Finally, Plaintiff has provided no evidence that Defendant Harris acted with deliberate indifference to his health and safety as provided in Wilson v. Seiter, 501 U.S. 294 (1991).  She is not a medical professional and was not involved in the medical treatment of inmates.

    **C.**    **Doe Defendants**

In his complaints, Plaintiff named unidentified medical staff at the Jail as defendants (Does). When the Court directed the issuance of summons and service on Defendant Harris, the Court notified Plaintiff of the opportunity to determine the identity of the Doe defendants through the use of discovery, and of his responsibility to notify the Court once he could identify them. (Doc. No. 7)  However, Plaintiff never identified these defendants. In the April 24, 2018 Order, the Court warned Plaintiff that FED.R.CIV.P. 4(m) requires that a defendant be served within ninety

days of the filing of the complaint, and that after notice to the plaintiff, the court must dismiss an action without prejudice against the defendants not served or order that service be made within a specified time. (Doc. No. 24)  The Court then provided Plaintiff fifteen more days in which to identify the Doe defendants.  Since Plaintiff did not do so, his claims against those defendants also are dismissed.

**IV.   Conclusion**

IT IS, THEREFORE ORDERED that:

1.   Defendant's Motion for Summary Judgment (Doc. No. 21) is GRANTED, and Plaintiff's claims against her are DISMISSED with prejudice.

2.   Defendant Does are DISMISSED without prejudice, for failure to serve.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 16th day of May, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

9